Luther E. Mansfield, Appellant, *v*. William Beard et al., Respondents.

The parties to this action entered into a contract by which plaintiff agreed to build for defendants a grain elevator of a certain capacity, for a sum specified. The contract provided that if, after trial of the elevator, "there proves to be any deficiency in the working of any of its parts, such parts shall be removed and replaced with new and acceptable work" by plaintiff; it also provided for a retention by defendants of twenty-five per cent of the contract price until the whole work was completed and accepted. Plaintiff built the elevator, defendants took possession, and thereafter continued to operate it ; they also paid the contract price in full. The elevator was not of the stipulated capacity, and defendants, without notifying plaintiff of the deficiency, expended money in improving the elevator, raising it to a capacity beyond that stipulated for in the contract. In an action upon another contract, defendants set up the sums so expended as a counter-claim, and they were allowed by the referee. *Held*, error; that while plaintiff was bound to remedy any defects, in order that he might do so, defendants were obligated to give him notice; that they could not, when defects were discovered, remedy them at the expense of plaintiff and in his absence, without notice or an opportunity on his part to do so.

(Submitted June 14, 1880; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*B. F. Tracy* for appellant. Acceptance of the work by the defendants after the trial provided for in the contract is conclusive evidence of the plaintiff's performance. (*Cassidy* v. *Lefevre*, 57 Barb. 313; *Illinois Bk.* v. *Carsen*, 31 id. 236; *Smith* v. *Brady*, 17 N. Y. 187; *Vanderbilt* v. *Eagle Iron Works*, 25 Wend. 665.) When the defendants, after trial, leased the elevator and their lessees took possession of it, and the defendants made the final payment under the contract, they accepted the work, as it then stood, as a fully completed work. (*Cassidy* v. *Lefevre*, 51 Barb. 313, 322; *Ilion Bank* v. *Carver*, 31 id. 236.)

*D. P. Barnard* for respondent.

EARL, J. This is an action for labor and materials alleged to have been furnished by the plaintiff to the defendants between the 1st day of June, 1872, and the 20th day of August, 1873, in building a "conveyor and spoutings" on certain storehouses in the city of Brooklyn. The amount claimed in the complaint is $5,004.45, besides interest, which is the balance of $7,635.55 after deducting payments amounting to $2,631.10.

The defendants for answer, among other things, allege that in April, 1872, they made a contract with the plaintiff, whereby he agreed to build for them, in front of certain stores in the city of Brooklyn, a grain elevator, with all its appurtenances and necessary machinery, for the sum of $11,130; and that in October, 1872, they made with him another contract, whereby he was to build over certain stores a conveyor and spoutings, to be connected with the elevator, for the sum of $3,400; that they paid and expended for the plaintiff for work and materials

in the performance of those contracts upwards of $20,000, which they claim to off-set and counter-claim in this action; and that they fully performed the contracts on their part, but that the plaintiff failed to perform them on his part, in consequence of which they suffered damages, which they also allege as a counter-claim.

The cause was referred, and upon the trial the plaintiff proved the amount and value of labor and materials furnished by him in building for the defendants the conveyor and spoutings. His evidence showed a balance due, after deducting payments, of $4,878.09. The defendants then proved the two contracts alleged in the answer, and gave evidence tending to show that the labor and materials mentioned in the complaint were furnished under one or both of the contracts, that the plaintiff failed fully to perform the contracts, and that the defendants were obliged to expend certain moneys to complete the performance thereof; and the referee in his report stated the account between the parties as follows:

| | |
|---|---:|
| Contract price of first contract.............. | $11,130 00 |
| Contract price of second contract............ | 3,400 00 |
|     Total credit to the plaintiff ............. | $14,530 00 |
| Paid by defendants upon first contract in cash.. | $11,130 00 |
| Paid for labor to complete that contract in 1873, | 703 00 |
| Paid for labor to complete that contract in 1874, | 828 12 |
| Paid for material chargeable to plaintiff ....... | 2,626 85 |
| Paid in cash upon second contract............ | 2,140 00 |
| | $17,427 97 |
|     Balance due defendants................ | $2,897 97 |

And for this balance, with interest, he ordered judgment in favor of the defendants.

The plaintiff filed proper exceptions to the report, and now claims that there was no proof which authorized the finding

against him of the three items for labor and materials furnished by the defendants, amounting to $4,157.97; and we are of opinion that the claim is well founded.

The referee found that, before the plaintiff had completed performance of the second contract, the defendants discharged him from his work thereon, and that the defendants furnished labor and material to complete the same; but he also found that they had failed to prove how much of the contract remained to be performed at the time of the discharge of the plaintiff, and how much work and material they had furnished on his account on that contract ; and hence he made no allowance to them on account of that contract. We are, therefore, concerned now only with the first contract.

The first contract provided that the plaintiff should build the elevator according to the specifications contained in the contract, " of the capacity to take from boats, weighing, screening and blowing the same, and put into store four thousand bushels of grain per hour ; and at the same time deliver from store to vessels alongside of wharf four thousand bushels of grain per hour, weighing, screening and blowing the same." The contract also provided, that " if, after a trial of the machinery and elevator, there proves to be any deficiency in the working of any of its parts, such parts shall be removed and replaced with new and acceptable work, by the party of the second part, to the satisfaction of the parties of the first part." It also provided that the contract price should be paid in monthly payments, as the work progressed, but that " the parties of the first part shall have the right to withhold from the sum payable monthly twenty-five per cent thereof, as further security for the full performance by the party of the second part, until the whole work shall be completed and accepted by the parties of the first part, when the amount thus withheld shall be at once paid."

The plaintiff went on under this contract and built the elevator, and the defendants took possession thereof and commenced to run the same about the first of October, 1872, and thereafter continued to operate the same. They paid the

plaintiff the contract price in full, including the twenty-five per cent withheld according to the terms of the contract. There proved to be some defects in the work, which were remedied by the plaintiff, as his attention was called to them. It is undisputed that the elevator could elevate four thousand bushels per hour, but it could not screen and blow over two thousand five hundred bushels, and there appeared by the use of the elevator to be other defects. The defendants, for the purpose of remedying those defects and improving the elevator, went on, in the latter part of the year 1872 and during the year 1873 and part of the year 1874, and expended in labor and material the amount of the three items above mentioned, and thus raised the elevator to a capacity of five thousand bushels per hour.

At the time the defendants took possession of the elevator in the fall of 1872, we must infer that the plaintiff claimed that he had completed the contract, and the defendants, either then or after some trial, paid him the contract price in full. If thereafter, upon trial, any defects were developed in the elevator or the machinery, the plaintiff was bound to make them good, and that he might do so, the defendants were bound to notify him of the defects and give him an opportunity to remedy them. The contract provided what was to be done in the case of defective performance on the part of the plaintiff, and that portion of the contract, like every other, was binding upon the parties. The defendants could not take possession of the elevator, and when, at any time, they discovered any defect in the work, go on and remedy the same at the expense of the plaintiff and in his absence, without any notice to him, or any opportunity on his part to do what, by his contract, he was bound to do.

It does not appear that the plaintiff refused or failed to remedy any defects which were brought to his notice. The defendants did not notify him of the defects which they claimed to have discovered and request him to remedy them, and give him an opportunity to remedy them. They expended the money which they now claim to charge to the plaintiff without

any notice to or request from him. Whenever they desired to improve the elevator or the machinery they went on and did it, without any reference to the plaintiff or the specifications contained in the contract. They replaced and repaired machinery which was worn out or impaired by use, and they increased the capacity of the mill to five thousand bushels per hour. There is no proof showing how much it would have cost to have completed the elevator according to contract, or what the cost of the precise defects which the plaintiff could have been required to remedy was. There is, therefore, no basis in the evidence or the findings to uphold the allowance of the three items above mentioned. This is not a case of conflict in the evidence, but one where the findings are unauthorized by any evidence. There should therefore be a new trial, to the end that if any facts exist which entitle the defendants to an allowance for the failure of the plaintiff to perform his contracts, they may be more fully developed.

The judgment should be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.